# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL UPTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **DAY & ZIMMERMAN NPS,** | ) | **2:15-cv-02131-AKK** |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Michael Upton asserts claims against Day & Zimmerman NPS ("D&Z")
under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), for
disability discrimination (Count II), prohibited medical inquiry (Count III), and
retaliation (Count IV).[1] Doc. 1. Presently before the court is Upton's motion for
partial summary judgment as to Counts II and III, doc. 51, and D&Z's cross-
motion for summary judgment on all claims, doc. 55. Both motions are fully
briefed, docs. 51, 56, 59, 61, 62, 63, and ripe for review. For the reasons stated
below, Upton's motion is due to be denied, while D&Z's motion is due to be
granted fully as to Counts I, III, and IV fully, and solely as to the regarded as claim
in Count II.

---

[1] Upton concedes his reasonable accommodation claim (Count I), doc. 59 at 4 n.1, and, as such,
that claim is due to be dismissed.

# I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent

evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

"The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014) (citing *Shazor v. Professional Transit Management, Ltd.*, 744 F.3d 948 (6th Cir. 2014)); see also *U.S. v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (applying the Rule 56 summary judgment standard where both parties moved for summary judgment). However, "cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the

parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

## II. FACTUAL BACKGROUND

Upton suffered various injuries in a car accident in 1989 that required ongoing medical treatment. Docs. 51 at 8; 56 at 7-8. In 2007, Upton's primary care physician referred him to Dr. Michael Gibson, who subsequently diagnosed Upton with lumbar radiculopathy, defined as pain in his lower back radiating to both legs. Docs. 51 at 9-10; 56 at 8; 61 at 24-25. Since that time, Upton has taken opiates prescribed by Dr. Gibson, including MS Contin, a long-acting oral form of morphine. Docs. 51 at 5, 9-10; 56 at 8.

D&Z, the primary maintenance contractor for several Southern Company facilities, employed Upton, a union pipefitter, beginning October 22, 2010. Docs. 51 at 6; 56 at 5, 11. As is customary in the industry, employers hire union pipefitters on a temporary basis and lay them off once a job is completed. Docs. 51 at 5; 56 at 5-6. Upton has had at least seven separate temporary stints for D&Z. Doc. 51 at 5. Upton has self-identified as disabled on the employee information form he submitted at the beginning of each work stint. *Id.* at 6.

Certain terms and conditions of Upton's employment are governed by the Powerhouse Maintenance Agreement ("PHMA") between Upton's union and

Alabama Power, a Southern Company subsidiary. Docs. 51 at 5; 56 at 5, 9-10. This includes the requirement that all workers pass a five-panel drug test before working at any power plant, unless they have been tested in the past six months. Docs. 51 at 5; 56 at 6. Each time Upton has taken a drug test, he has tested non-negative for opiates and successfully completed the medical review process to verify his prescriptions are legitimate, including submitting a letter from Dr. Gibson attesting to Upton's ability to work safely while taking the prescription. Docs. 51 at 5-6; 56 at 11.

In January 2015, Upton's union referred him to D&Z for a job at the Gaston Plant in Wilsonville, Alabama. Docs. 51 at 6; 56 at 12. The sole decisionmaker for employment at Gaston is Howard Humphrey, docs. 51 at 7; 56 at 11, who had previously approved Upton for employment, doc. 56 at 11. For the 2015 referral, in compliance with the PHMA, Upton took a drug screen and submitted the supporting letter from Dr. Gibson.[2] Doc. 51 at 6. In this letter, in addition to verifying the prescription and attesting to Upton's ability to safely work while taking the medication, Dr. Gibson informed D&Z that requiring employees to disclose their medications may violate the ADA. *Id.* at 6-7. Upton filed this lawsuit alleging violations of the ADA, in that he was not rehired because Humphrey allegedly accessed Upton's drug test results and learned what prescription

---

[2] Prior to this, the last time Upton took a drug test was at D&Z's Gorgas Plant, before transferring to the Gaston Plant in 2014. Doc. 56 at 9-10.

medications Upton was taking, and in retaliation for the allegedly protected activity of submitting Dr. Gibson's letter.

## III. ANALYSIS

Before the court are cross-motions for summary judgment. Upton moves partially on Count II (disability discrimination)—specifically on the issues of being an individual with a disability under the actual disability, record of disability, and regarded as theories, and a qualified individual—and fully on Count III (prohibited medical inquiry). D&Z has moved on all counts. The court begins by examining the parties' cross-motions on Counts II and III, then turns to D&Z's motion on Count IV.

### A. Disability Discrimination—Count II

In Count II, Upton alleges D&Z violated the ADA by refusing to rehire him on the basis of "his previous disclosures of his disability status and his prescriptions for medication," "his record of disability," or "his actual disability." Doc. 1 at 10-12. To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) he is disabled; (2) he is a qualified individual; and (3) he suffered unlawful discrimination because of his disability. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996). The parties disagree on whether Upton can make these showings, with Upton arguing that the court should grant

him summary judgment on the first two prongs, and find as a matter of law that he is a qualified individual with a disability.

## 1. Whether Upton is an Individual with a Disability

An individual has a disability under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities;[3] (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1). The definition of disability is to be construed "in favor of broad coverage . . . to the maximum extent permitted . . . ." 42 U.S.C. § 12102(4)(A).

### a. Actual Impairment

The parties agree that Upton has a diagnosis of lumbar radiculopathy. Docs. 51 at 10; 61 at 24-25. They disagree, however, on whether this diagnosis is sufficient for the court to find as a matter of law that Upton has a qualifying impairment under the ADA. Specifically, D&Z argues that because this diagnosis is based solely on Upton's subjective complaints of pain, it cannot constitute a disabling impairment. *See* doc. 61 at 21-23 (citing *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435 (6th Cir. 2016)). However, the *Neely* court held that "self-described symptoms . . . without corroborating medical evidence *or any*

---

[3] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

*diagnosis* are insufficient to establish a substantial limitation on a major life activity." 640 F. App'x at 435 (emphasis added). As D&Z concedes, doc. 61 at 24-25, Upton has a medical diagnosis. Accordingly, in the absence of any citation to a case from the Eleventh Circuit, the court declines to find as a matter of law, based on an out-of-circuit unpublished case, that a diagnosis based solely on self-described complaints of subjective pain cannot qualify as a disabling impairment under the ADA.

Alternatively, D&Z contends that Upton is not disabled under the ADA because his diagnosed condition does not substantially impair him in any major life activities.[4] To support its contention, D&Z cites Upton's testimony that he was "active" and "able to do most everything he wanted within limitations" from 2007 through 2015, and argues also that none of Upton's medical providers stated any activity that Upton had trouble performing. Doc. 59 at 21. However, D&Z's reliance on one portion of Upton's testimony overlooks other testimony that Upton has difficulty walking, standing, and kneeling due to back, leg, and knee pain, and that he is purportedly unable to get out of bed in the morning without his medication. Doc. 51 at 8, 20-21. To find that Upton's assertions "[are] insufficient

---

[4] An impairment is substantially limiting if it renders a person "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

evidence as a matter of law" on the substantial limitation issue, as D&Z asserts, *see* doc. 63 at 8 n.3, the court would have to weigh the evidence and place more emphasis on only a certain portion of it, and/or make credibility determinations. Both are matters within the province of the jury. As such, the court will deny both parties' motions on this issue.

### b. Record of Impairment

Upton contends that Dr. Gibson's testimony and documentation establish that he is disabled via a record of impairment.[5] Doc. 51 at 20-21. D&Z disputes Dr. Gibson's records for the reasons discussed *supra* at III.A.1.a, specifically, that the records "merely regurgitate Upton's subjective pain complaints" and that "[Upton's diagnosis is] nothing more than fancy ways of saying subjective pain complaints," and therefore do not show that Upton has a history of a disabling impairment. Doc. 61 at 22-23. For the same reasons stated earlier—i.e. that the factfinder will ultimately have to decide whether Upton's impairment substantially limits one or more of his major life activities—the parties' competing motions on this issue are also due to be denied.

---

[5] A person has a record of impairment if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Simpson v. Alabama Dep't of Human Res.*, 311 F. App'x 264, 268 (11th Cir. 2009) (citing 29 C.F.R. § 1630.2(k)).

*c. Regarded as Having an Impairment*

Upton also asserts that he is disabled via the regarded as prong.[6] Specifically, Upton claims that D&Z regarded him as disabled because he has self-identified as disabled on his employee information form and submitted letters from Dr. Gibson identifying his medications each time he applied for a work stint. Doc. 51 at 17-18. However, because Humphrey was not the decisionmaker for any of the previous occasions Upton applied for work and took a drug test,[7] and because the parties agree Humphrey was the sole decisionmaker for the application that is at issue in this case, the issue turns on whether Humphrey regarded Upton as disabled based on the information pertaining to what he purportedly saw in January 2015. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005) ("[A] decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability"). Therefore, because Upton does not allege that Humphrey had access to the documents in which Upton self-identified as disabled, *see* docs. 51 at 5-19; 59 at 5-16, 20-24; 62 at 3-5, 7-9, this contention does not prove his regarded as claim. Indeed, Upton does not contend that his self-

---

[6] "The ADA provides that an individual is 'regarded as' disabled if she 'establishes that . . . she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Lewis v. City of Union City*, 877 F.3d 1000, 1011 (11th Cir. 2017) (quoting 42 U.S.C. § 12102(3)(A)) (alterations in original).

[7] Humphrey previously hired Upton in 2014, but Upton did not take a drug test on that occasion, pursuant to the PMHA. *See supra* at n.2; doc. 56 at 9-10.

identification alone is sufficient to establish that Humphrey regarded him as disabled. *See* docs. 51 at 15-19; 59 at 20-24; 62 at 8.

As to Humphrey's alleged knowledge of Upton's positive test, Upton contends that Humphrey learned about the positive test for morphine by accessing Upton's January 2015 drug test results, doc. 51 at 18, and that accessing the test results indicated that Humphrey knew Upton had a "a chronic pain syndrome or a cancer of some kind," doc. 62 at 8. But, even assuming that Humphrey knew of Upton's drug test results, as D&Z notes, Upton has not cited any law in support of the contention that Humphrey's knowledge that Upton tested positive for morphine, which is found in both legal and illegal drugs, is sufficient to establish that Humphrey regarded Upton as disabled. Doc. 61 at 20. At best, this evidence establishes only that Humphrey knew that Upton had taken something that contained a narcotic. To find further that this also means that Humphrey regarded Upton as disabled would require the court to speculate about matters that are not in the record. The court declines to do so, because facts, rather than speculation or conjecture, are required to defeat a motion for summary judgment. *Cordoba*, 419 F.3d at 1181 ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment") (citation and internal quotation marks omitted). Therefore, in the absence of any evidence linking the purported knowledge of the positive test to a

belief that Upton has a purported disabling condition, the test results alone cannot support a regarded as claim.

Finally, Upton contends that Humphrey saw the letter from Dr. Gibson that Upton submitted in January 2015 and regarded him as disabled as a result of this. Doc. 59 at 7. However, the only evidence Upton cites in support of this contention is Humphrey's testimony that he typically receives physician's letters submitted by applicants at Gaston. *Id.* As D&Z notes, doc. 63 at 3-4, a statement that Humphrey typically receives such letters is not the same thing as evidence he actually saw the specific letter about Upton in contention. Indeed, Humphrey testified that he had no recollection of seeing this letter, docs. 56 at 13; 59 at 7-8, 20-24; 61 at 19, and Upton cites no evidence that Humphrey actually saw the letter prior to making the decision not to rehire him, *see* docs. 51 at 13-19; 62 at 7-8. While "a witness' statement that he 'does not recall' information . . . is insufficient to refute record evidence unequivocally establishing the matter," *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1311 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049-50 (4th Cir. 1987); *Posey v. Skyline Corp.*, 702 F.2d 102, 105-6 (7th Cir. 1983)), here, there is no record evidence whatsoever to establish that Humphrey saw the letter in question. Upton supports his contention with speculation alone, which is insufficient to defeat a motion for summary judgment. *Kernel Records Oy v.*

*Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Although all justifiable inferences are to be drawn in favor of the nonmoving party, inferences based upon speculation are not reasonable") (internal citations and quotation marks omitted); *Cordoba*, 419 F.3d at 1181.

Therefore, based on the record before the court, summary judgment is due in favor of D&Z as to the regarded as prong of the disability discrimination claim, and Upton's motion on the issue is due to be denied.

### 2. Whether Upton is a Qualified Individual with a Disability

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Upton and D&Z agree that the question of "essential functions" is controlled by the PMHA, which requires employees using prescription medication to (1) present a prescription; (2) comply with the prescription; and (3) provide a letter from their physician stating that the employee can safely and efficiently perform her job duties while under the influence of the medication. Docs. 51 at 22; 59 at 22.

Here, Upton's status as a qualified individual turns on his compliance with his prescription. The parties disagree on this issue, with D&Z contending that Upton has failed to take his medications as prescribed a total of nine times between 2010 and 2014, doc. 61 at 25, and with Upton conceding to only two occasions of

noncompliance in 2010, docs. 51 at 11-12; 59 at 19. Upton also argues that Dr. Gibson's continued treatment of him and provision of letters prove Upton complied with his prescription, doc. 62 at 10, as Dr. Gibson testified that he would not write a work letter for a patient that is abusing her medication, doc. 51 at 12. However, allegedly, Dr. Gibson supplied the letters without properly determining that Upton could perform his job while taking opiates, provided these letters to Upton "on demand without [Upton] having to undergo any type of evaluation or assessment by a physician," and did not personally evaluate Upton at all in 2014, relying on an assistant's evaluations instead. Doc. 56 at 22. This quintessential dispute of material facts weighs against resolving the qualified individual issue at the summary judgment stage. Accordingly, both parties' motions on this issue are due to be denied.

### 3. Whether Upton Suffered Discrimination Because of his Disability

Finally, as it relates to Count II, D&Z argues that even if Upton is a qualified individual with a disability, the discrimination claim would still fail because Upton cannot show causation, i.e. that he suffered an adverse action because of his disability. According to D&Z, Humphrey did not hire Upton in 2015 because Upton had six unexcused absences in his immediate previous five month employment period at the Gaston Plant, and during that prior stint, one of Upton's supervisors had complained to Humphrey about Upton's job performance. Doc. 56

at 26-29. While these are reasons that might in fact motivate a reasonable employer's personnel decisions, the record at this point militates against a finding for D&Z. Specifically, Upton cites purported direct evidence of discrimination: (1) the deposition testimony of Bo Jackson, the Business Manager of Upton's union, that Humphrey stated he based his decision in part on Upton's prescribed medication and the delays between Upton's drug test and clearance for work; and (2) Humphrey's deposition testimony that he could not recall whether he discussed Upton's medications when discussing with his boss the decision not to rehire Upton. Doc. 59 at 21. More significantly, Upton has casted doubt on D&Z's articulated reason by contending that (1) his supervisors never issued him a disciplinary write-up for absenteeism; (2) D&Z included his name on a list of workers laid off due to lack of work rather than for alleged cause; and (3) his union subsequently referred him back for work at Gaston based on his layoff designation. *Id.* at 25, 27. Because a jury could indeed find that these acts show that D&Z's contention that Upton had attendance or performance issues is a pretext for discrimination, D&Z's motion for summary judgment on the disability claim is due to be denied.

### B. Medical Inquiry Claim—Count III

In Count III, Upton pleads that D&Z made an improper medical inquiry, in violation of 42 U.S.C. § 12112(d)(2)(A), when it required Upton to undergo a pre-

offer drug test and when Humphrey allegedly accessed Dr. Gibson's letter and the Medical Review Office's report that Upton had tested positive for morphine.[8] Doc. 1 at 12-13. Although the Complaint pleads only an alleged violation of § 12112(d)(2)(A), Upton contends in his brief that Humphrey's inquiry also violated 42 U.S.C. § 12112(d)(3)(B).[9] Doc. 51 at 29-30. But, as D&Z notes, doc. 61 at 13-14, Upton did not plead a purported violation of § 12112(d)(3)(B), and courts are instructed against allowing parties to amend their pleadings at the summary judgment stage to add new claims, *see, e.g., Ganstine v. Sec'y, Fla. Dep't of Corrs.*, 502 F. App'x 905, 909-10 (11th Cir. 2012); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002). Contrary to Upton's contention, the single line in his Complaint that "[u]pon information and belief, Mr. Humphrey . . . had made an inquiry and learned what prescription medications Plaintiff was taking" is insufficient to plead a claim under § 12112(d)(3)(B). Therefore, Upton's belated attempt to plead such a claim fails.

---

[8] 42 U.S.C. § 12112(d)(2)(A) prohibits "conduct[ing] a medical examination or mak[ing] inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability."

[9] 42 U.S.C. § 12112(d)(3)(B) requires employers to treat information regarding the medical condition or history of job applicants as confidential medical records.

As for the actual claim pleaded, as Upton acknowledges, doc. 56 at 13-14, a drug test is not a medical inquiry under § 12112(d)(2)(A). 42 U.S.C. § 12114. As for the contention that Humphrey accessed the letter from Dr. Gibson and the Medical Review Office file, even if true, "[m]edical information may be given to—and used by—appropriate decision-makers involved in the hiring process so they can make employment decisions consistent with the ADA" without violating § 12112(d)(2)(A). ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations (EEOC Oct. 10, 1995), *reprinted in* EEOC Compl. Man. (CCH) ¶ 6903, at 5380; *O'Neal v. City of New Albany*, 293 F.3d 998, 1009 (7th Cir. 2002) (holding that disclosure of medical records to employment decision-makers was permissible under § 12112(d)(2)(A)). Accordingly, reviewing these facts in the light most favorable to D&Z, Upton's motion for summary judgment on Count III is due to be denied. Conversely, reviewing the facts in the light most favorable to Upton, D&Z's motion is due to be granted.

### C. Retaliation Claim—Count IV

In Count IV, Upton pleads that D&Z refused to rehire him in retaliation for his allegedly protected conduct of submitting a letter from Dr. Gibson stating that D&Z's policies regarding the disclosure of specific medications may be in violation of the ADA. Doc. 1 at 14-15. To state a *prima facie* case of retaliation

under the ADA, a plaintiff must show that (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). A plaintiff need not prove that the underlying discriminatory conduct his protected activity opposed is actually unlawful in order to establish a *prima facie* claim, but only that he had a "good faith, reasonable belief" that his employer was engaged in an unlawful employment practice, so long as that belief is objectively reasonable in light of the facts and record presented. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

D&Z contends that, because the purported protected activity is Dr. Gibson's letter, the retaliation claim fails because Dr. Gibson did not have a good faith, reasonable belief that D&Z's policies violated the ADA. Doc. 56 at 31-32. The parties' briefing, which focuses on Dr. Gibson's belief, misses the mark because, according to the Complaint, the alleged protected activity was Upton's submission of Dr. Gibson's letter to D&Z. Doc. 1 at 14-15. The question, then, is whether Upton, rather than Dr. Gibson, had a good faith belief that D&Z's policies were unlawful, and whether that belief was objectively reasonable in light of the facts and record presented. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *Little*, 103 F.3d at 960. Neither party presents any evidence addressing

Upton's good faith and reasonability, or lack thereof, *see* docs. 56 at 30-32; 59 at 31-33, 63 at 9-10, and, as the parties know, "[j]udges are not like pigs, hunting for truffles buried in briefs [or the record]," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Still, even if Upton had a good faith belief, the alleged discriminatory conduct Upton challenged through the submission of Dr. Gibson's letter must be based also on a belief that is objectively reasonable. *Little*, 103 F.3d at 960. In that respect, D&Z argues that the submission of the letter was not based on an objectively reasonable belief because the conduct challenged by the letter is attributable to the terms of the PMHA between Upton's union and Southern Company, rather than to D&Z. Doc. 56 at 31. Upton disagrees, contending that, while Humphrey testified that he interprets the PMHA as requiring disclosure of specific medication, doc. 52-3 at 12, the terms of the agreement itself only require employees to disclose that "such [prescription] medicine has been prescribed" and "furnish[] a physician's statement that the use of such prescription medication will not impair the employee's safe and efficient performance of the job," not to disclose the specific medication, doc. 59 at 31 n.15 (citing doc. 52-6 at 28). But Upton's reading of the PMHA ignores the plain language of the policy and its intent. The provision is designed to allow an employee to show that her positive drug test is due to a prescribed medication. There is no way for an employee to

make this showing without the employee disclosing the actual medication. After all, an employer needs to match the substance that tested positive to the actual prescription to verify that the employee tested positive for legitimate reasons. Reading the PHMA as requiring the disclosure of specific medications is consistent with the language of the PHMA, which references "such medicine," "such prescription medicine," or "prescription medicine" throughout. *See* doc. 52-6 at 28. There is simply no way to comply with the intent of the PHMA without disclosing the name of the "such medicine" that is purportedly the source of the substance that triggered the positive test.

Moreover, even if Upton is correct that the PMHA does not require the disclosure and that it was a requirement arbitrarily imposed by Humphrey, the Eleventh Circuit has held that such an inquiry is permissible under the ADA at the pre-offer stage as long as the employer refrains from asking "disability-related questions." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215-16 (11th Cir. 2010) ("[If] an applicant tests positive for illegal drug use . . . the employer may validate the test results by asking about lawful drug use or possible explanations for the positive result . . . such as 'What medications have you taken that might have resulted in the positive test result? Are you taking this medication under a lawful prescription?'") (quoting EEOC Enforcement Guidance) (some alterations in original). In light of this and the plain terms of the PHMA, Upton's

belief that Humphrey and/or D&Z had violated the law solely by inquiring about his specific medications is not objectively reasonable, and as such, his retaliation claim fails.

Finally, the claim also fails because Upton cannot show causation. As discussed *supra* at III.A.1.c., Humphrey testified that he had no recollection of seeing the letter, docs. 56 at 13; 61 at 19, and Upton cites no actual evidence to show that Humphrey actually saw the letter from Dr. Gibson, *see* docs. 51 at 13-19; 62 at 7-8. Thus, Upton is unable to show retaliatory animus factored in Humphrey's decision. Accordingly, D&Z's motion for summary judgment on Count IV is due to be granted.

## IV. CONCLUSION AND ORDER

For the reasons stated above, Upton's motion for partial summary judgment, doc. 51, is **DENIED**. D&Z's motion for summary judgment, doc. 55, is **GRANTED in part**. Accordingly, Counts I, III, and IV of Upton's Complaint are **DISMISSED WITH PREJUDICE**. Count II is dismissed only as to the regarded as prong of Upton's disability discrimination claim. The court will set the pretrial and trial by a separate order.

**DONE** the 18th day of January, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE